José Malgor y Cía., demandante y apelante, *v.* B. Silva Sucrs., M. A. Carlo e Hijos, Santiago Hnos. y López Hnos., demandados y apelados.

Núm. 10052.—*Sometido:* Diciembre 1, 1949. *Resuelto:* Enero 20, 1950.

---

804

*Otero Suro & Otero Suro,* abogados de la apelante; *Oscar Souffront y A. Ramírez Silva,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Al finalizar la prueba de la demandante, las demandadas presentaron una moción de *nonsuit* que fué declarada con lugar por la corte inferior. En las apelaciones interpuestas contra las sentencias dictadas al efecto,[1] la demandante sostiene que la corte sentenciadora erró (1) al resolver que ella carece de causa de acción por no haber solicitado con anterioridad a la radicación de la demanda el reconocimiento pericial de las habichuelas a que los casos se refieren; (2) al resolver que mediante el depósito judicial de la mercancía ella no dejó cumplidas las prestaciones a que se obligó al contratar con las apeladas; (3) y al declarar con lugar la moción de nonsuit de las demandadas. Al igual que lo han hecho las partes, discutiremos conjuntamente los errores así señalados.

Ante la Corte de Distrito de Mayagüez se radicaron sendas demandas contra las demandadas B. Silva Sucrs., M. A. Carlo e Hijos, Santiago Hnos. y López Hnos. En dichas demandas, concebidas en términos casi idénticos, se alega en lo esencial que la demandante se dedica al negocio de importación y compraventa al por mayor de provisiones para la reventa y que las demandadas son sociedades constituídas de acuerdo con las leyes de Puerto Rico y dedicadas también a la compra para la reventa de provisiones y otros efectos; que la demandante vendió a las demandadas ciertas partidas (que se especifican) de habichuelas rosadas por precio estipulado, las que serían embarcadas desde California en la pri-

[1] La corte inferior dictó cuatro sentencias separadas debido a que se trata de cuatro casos distintos que envuelven las mismas cuestiones, que fueron vistos conjuntamente ante dicha corte y que han sido consolidados en apelación.

mera quincena de febrero de 1948; que el vapor que trajo dicha mercancía llegó al puerto de Mayagüez el 7 de marzo siguiente y las demandadas fueron notificadas del arribo de la misma, extendiendo la demandante órdenes de entrega al efecto; que las demandadas se han negado a hacerse cargo de la mercancía y a pagar su importe; que las habichuelas están depositadas en la Mayagüez Dock and Shipping Co. en Mayagüez en favor de cada una de las demandadas y que dicha Mayagüez Dock and Shipping Co. es una sociedad mercantil debidamente matriculada y una contribuyente que a su juicio ofrece suficiente garantía. Con estas alegaciones la demandante solicita se ordene el depósito judicial de la mercancía y se designe a la Mayagüez Dock and Shipping Co. como depositaria; y que previos los trámites legales oportunos se dicte sentencia condenando a las demandadas a cumplir su contrato con la demandante y que en su consecuencia se condene a aquéllas a pagar a la demandante el importe de la mercancía envuelta, con intereses legales, más las costas y honorarios de abogado. Radicadas las demandas, la corte inferior dictó el mismo día órdenes decretando el depósito judicial de la mercancía y designando como depositaria a la entidad sugerida por la demandante.

Las demandadas interpusieron en su contestación las defensas de derecho de que la corte carece de jurisdicción para conocer de la materia de la acción y de que las demandas no aducen hechos constitutivos de causa de acción. También suscitaron la defensa de que las ventas se efectuaron a base de calidad conocida en el comercio de Puerto Rico y de que la mercancía ofrecídales no cumplía con tal requisito. Suscitaron asimismo como defensa especial la de que la corte carecía de jurisdicción para entender en el litigio, toda vez que la demandante no había procedido a depositar judicialmente la mercancía antes de radicar las demandas y porque, además, no dió cumplimiento a las disposiciones del artículo 245 del Código de Comercio. Poco después las partes radicaron estipulaciones aviniéndose a que por ser deteriorable

por la acción del tiempo la mercancía, que se vendiera la misma en pública subasta a la mayor brevedad posible y se depositara en corte el producto que se obtuviera. También estipularon que se sacaran tres muestras de cada partida de habichuelas, que serían debidamente lacradas en una caja al efecto, y que se entregara una de las muestras al secretario de la corte y otra a cada una de las partes. Hacían constar también en las estipulaciones que las mismas no debían interpretarse como una renuncia (*waiver*) de los derechos que pudieran tener en el litigio, ni como una renuncia de cualquier defensa aducida o que pudieren aducir dentro del procedimiento. Aprobadas las estipulaciones por la corte, tomadas las muestras acordadas, vendida la mercancía en pública subasta, depositado su producto en la secretaría de la corte, y luego de sendos interrogatorios a las demandadas en relación con los cuales la corte a quo dictó órdenes aprobatorias que fueron cumplimentadas, fué el pleito a juicio. Después de desfilar amplia prueba testifical y documental ofrecida por la demandante, las demandandas presentaron moción de nonsuit que fué de primera intención declarada sin lugar por la corte. Al solicitar las demandadas se reconsiderara la resolución verbal dictada y luego de radicarse alegatos escritos, la corte, fundada en extensa resolución, dictó sentencia declarando con lugar la moción de nonsuit y sin lugar la demanda, con costas, pero sin honorarios de abogado. Actuó la corte acertadamente.

██ Una moción de nonsuit admite toda la evidencia aducida por la demandante en su parte más favorable a ésta. *Pagán* v. *Santiago*, 69 D.P.R. 145, 148; *Villanueva* v. *Suárez*, 41 D.P.R. 40; *Shaw* v. *Missouri Pacific R. Co.*, 36 Fed. Supp. 651. De forma que habiendo tan sólo una *scintilla* de evidencia para sostener una causa de acción la moción debe ser declarada sin lugar. ¿Se alegó en este caso una causa de acción y hubo tal *scintilla* de evidencia para sostener la misma? Ése es en verdad el nervio de la cuestión que está ante nos.

No hay la menor duda de que las transacciones aquí envueltas fueron de carácter mercantil. Artículo 243 del Código de Comercio, edición de 1932; *Nieves* v. *Sucrs. de J. Morales Díaz*, 62 D.P.R. 761. Tampoco la hay de que la mercancía objeto de los contratos de compraventa entre la demandante y las demandadas fué recibida y su entrega ofrecida oportunamente. La disputa entre las partes surgió principalmente en torno de la calidad de las habichuelas objeto de los contratos por ellas celebrados. La demandante sostuvo en todo momento haber recibido y ofrecido entregar a las demandadas habichuelas rosadas núm. 2 y éstas por su parte alegaron que el producto que se les ofrecía no era de la calidad conocida en el comercio por habichuelas rosadas de ese número y que, por el contrario, se les ofrecía la entrega de mercancía de inferior calidad.

La evidencia aducida por la demandante tendió a demostrar todas las alegaciones de su demanda y, en cuanto a la calidad de la mercancía, que la misma era de la conocida en el mercado de Mayagüez por habichuelas rosadas núm. 2. También ofreció prueba la demandante al efecto de que ella propuso por diversos conductos a las demandadas un arbitraje que comprendería un peritaje.[2]

Ahora bien, ¿exige la ley como requisito previo a la radicación de una demanda de esta naturaleza que la parte demandante dé cumplimiento estricto previamente a las disposiciones del artículo 245 del Código de Comercio antes de poder acudir ante los tribunales con cualquier otro procedimiento? Opinamos que sí. Ese artículo—que era el 327 del Código de Comercio de 1886—según fué enmendado por la Ley núm. 42 de 25 de abril de 1930 (págs. 321, 349), textualmente copiado provee:[3]

"Artículo 245.—Si la venta se hiciese sobre muestras o determinada calidad conocida en el comercio, el comprador no podrá rehusar

[2] Véanse las declaraciones de los testigos Thomas Boothby, Manuel A. Ramírez y Emilio Figueroa Peiro a las págs. 40, 94 y 145–174 de la transcripción de evidencia, respectivamente.

[3] La enmienda de 1930 consiste tan sólo en la adición del último párrafo.

el recibo de los géneros contratados, si fueren conformes a la muestra o a la calidad prefijada en el contrato.

"*En el caso de que el comprador se negare a recibirlos, se nombrarán peritos por ambas partes, que decidirán si los géneros son o no de recibo.*

"Si los peritos declarasen ser de recibo se estimará consumada la venta, y en el caso contrario, se rescindirá el contrato, sin perjuicio de la indemnización a que tenga derecho el comprador.

"*Si alguna de las partes se niega al nombramiento del perito, o lo demora injustificadamente, transcurrido el plazo convenido, o, a falta de pacto, después de un plazo prudencial, fijado por requerimiento notarial, la otra parte podrá solicitar de la autoridad judicial competente la designación de uno o más peritos, y el dictamen de éstos será decisivo a los efectos del párrafo anterior.*" (Bastardillas nuestras.)

El detenido estudio que hemos hecho de la cuestión que está ante nuestra consideración nos convence de que el procedimiento especificado en el artículo 245, supra, es uno exclusivo, y de que cuando la compraventa mercantil se hace a base de muestra o de calidad conocida en el mercado y la rehusa por el comprador se basa en que la mercancía cuya entrega se le ofrece no está de acuerdo con la muestra o no se ajusta a la calidad conocida, las partes deben dar cumplimiento estricto a lo provisto en ese artículo. Demandas como las aquí envueltas, en que no se alegaba haberse acudido al peritaje en la forma provista por el artículo 245, supra, cuyo contexto es imperativo, dejan claramente de aducir una causa de acción.

Cierto es que puede permitirse que cualesquiera defectos de una demanda se consideren subsanados por la prueba,[4] pero en estos casos ni las demandas alegaron, ni la prueba demostró, que al negarse los compradores a recibir las habichuelas, las partes estuvieran dispuestas a nombrar peritos que decidirían si las mismas eran o no de recibo, ni que al negarse los compradores al nombramiento de tales peritos o al demorar éstos tal nombramiento injustificadamente, o al transcurrir el plazo convenido o a falta de pacto,

---

[4] Regla 15(*b*).

después de un plazo prudencial, fijado por requerimiento notarial, la vendedora solicitara de la autoridad judicial competente la designación de uno o más peritos en cada caso, según de manera taxativa requiere el ameritado artículo del Código de Comercio. En ausencia de tales alegaciones o de prueba a ese efecto, no cometió error la corte inferior al sostener las mociones de nonsuit. Incuestionable es que la prueba tendió a demostrar que la demandante propuso sendos arbitrajes que comprenderían peritajes, mas ello no bastaba. Era indispensable un cumplimiento estricto del contexto taxativo del precepto de ley ya enunciado y aquí no lo hubo. Véanse Gay de Montellá, Tomo III, volumen I, Código de Comercio Español, páginas 175 y 177; Lorenzo Benito, Derecho Mercantil, Tomo II, Tercera Edición, (1924), pág. 304; y 6 Manresa, Ley de Enjuiciamiento Civil, Tercera Edición (1910) pág. 569.

█ El depósito solicitado por la vendedora era improcedente. Según el artículo 250 del Código de Comercio "Si el comprador rehusare *sin justa causa* el recibo de los efectos comprados, podrá el vendedor pedir el cumplimiento o rescisión del contrato, depositando judicialmente en el primer caso las mercaderías. (Bastardillas nuestras.) Pero aquí la rehusa de las habichuelas no se hacía *sin justa causa,* sino porque según los compradores la calidad de las que se les ofrecían era distinta a la conocida en el comercio.

*Deben confirmarse las sentencias apeladas.*